# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:13-cv-250-RJC

| | |
|---|---|
| WILMA K. WHEELER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>    Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Judgment on the Pleadings and supporting memorandum, (Docs. 11, 12), and Defendant's Motion for Judgment on the Pleadings and supporting memorandum. (Docs. 13, 14). They are ripe for review.

## I.   BACKGROUND

### A.   Procedural Background

Wilma Wheeler (Plaintiff) seeks review of the denial of her disability insurance claim by Defendant. (Doc. 1). Plaintiff's application for Title II Disability Insurance Benefits and Title VII Supplemental Security Insurance Benefits was originally denied in November 2010. (Docs. 13-14). A hearing before an Administrative Law Judge (ALJ) was held on December 5, 2012. On December 28, 2012, the ALJ held Plaintiff was not disabled within the meaning of the Act. (Id.). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 24, 2013. (Id.).

### B.   Factual Background

Plaintiff appeals the ALJ's finding that she is not disabled within the meaning of the

-1-

Social Security Act. The term "disability" is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that can be expected to last for a continuous period of no less than twelve months." Social Security Act § 1614(a)(3)(A). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a) (2012). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
>
> (5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2009, the alleged onset date. Additionally, Plaintiff was found to have the following severe impairments: chronic obstructive pulmonary disease, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, bursitis in the hip, mild diabetic neuropathy, organic mental disorders, affective mood disorders, and anxiety-related disorders.

At step three, however, the ALJ found that neither the Plaintiff's physical nor mental impairments meet the levels of severity required by the Act. (Administrative Transcript at 17). At step five, the ALJ found that Plaintiff, despite her impairments, was able to work at jobs requiring simple, routine, and repetitive tasks with little exertion. (Tr. 28).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . ."). "Substantial evidence" has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the

outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff argues that the ALJ erred on three grounds: (1) the ALJ improperly evaluated the medical opinion of the psychological consultative examiner (CE); (2) the ALJ improperly evaluated the Plaintiff's impairments under Listing 12.02 for organic mental disorders; and, (3) the ALJ erred by giving no consideration to Plaintiff's prescribed oxygen tank in her residual functional capacity (RFC). The Court reviews each of these arguments in turn.

### A. Medical Opinion of the Psychological CE

Plaintiff first argues that the medical opinion of the psychological CE, Dr. Richardson (undersigned by Dr. Fiore), is inconsistent with the ALJ's RFC. (Doc. 12). As part of the disability determination, the ALJ assesses the claimant's ability to work despite her impairments. If the ALJ's findings are inconsistent with any medical evidence on record, the ALJ must address the inconsistency in his decision and explain the appropriate assignment of weight to each medical opinion on record. 20 C.F.R. § 404.1520b. The ALJ, Plaintiff alleges, committed legal error by failing to address the inconsistency between his opinion and the CE's opinion. (Doc. 12). Specifically, Plaintiff contends the ALJ's conclusion that Plaintiff is capable of working a forty hour work week is inconsistent with the CE's report because it fails to address her recent low IQ score of 57, her "poor tolerance in managing the stress and pressure associated with a work routine," and her inability to "manag[e] her personal, financial, and business affairs without supervision." (Tr. 285).

The ALJ gave proper weight to the opinion of Dr. Richardson because her opinion is consistent with the medical opinions of Drs. Burgess and Fulmer who noted the Plaintiff's

-4-

difficulties tolerating stress and managing daily affairs, but nonetheless found her capable of work in a low stress environment with minimal social demands. 20 C.F.R. § 404.1520b; see (tr. 26, 277, 319, 342). Furthermore, the ALJ properly accommodated the CE's findings—corroborated by the examining physicians who also support a finding of not disabled—deciding, that despite her incapacities, the Plaintiff is capable of working a forty-hour week in a position that requires minimal exertion and "simple, routine, repetitive work." (Tr. 19). There is no "serious inconsistency" in the ALJ's holding as the Plaintiff contends. (Doc. 12).

    B.    <u>Plaintiff's Impairments Under Listing 12.02</u>

Plaintiff next alleges that at step three of the disability determination, the ALJ erred by concluding Plaintiff's organic mental disorder did not meet the requirements of Listing 12.02. (Doc. 12). To satisfy the requirements of 12.02 (for an organic mental disorder), the claimant must prove subsection C of 12.02 is met, or the claimant must prove both subsections A and B are met. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Subsection C requires a "[m]edically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities . . . and [a c]urrent history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." <u>Id.</u> § 12.02(C)(3). Subsections A and B jointly require "[d]emonstration of a loss of specific cognitive abilities or affective changes" which can be met by proving a "[l]oss of measured intellectual ability of at least 15 I.Q. points from premorbid levels." <u>Id.</u> § 12.02(A)–(B). Additionally, the loss of cognitive ability must result in at least two of the following: (1) marked restriction of activities of daily living; or, (2) marked difficulties in maintaining social functioning; or, (3) marked difficulties in maintaining concentration, persistence, or pace; or, (4) repeated episodes of

decompensation, each of extended duration. Id. § 12.02(B).

In regards to Subsection C, the ALJ found that there was no evidence in the record to suggest the Plaintiff resides in "a highly supportive living arrangement," let alone the inability to function outside of one. (Tr. 19). The introductory material to 12.00 provides a general outline of what constitutes a "highly supporting living arrangement":

> *Effects of structured settings:* Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you.

Id. § 12.00(F). By contrast, Plaintiff experiences only mild limitations in her daily activities and relies little on her husband who is disabled. (Tr. 317). Although at times Plaintiff requires assistance, reminders, or periods of rest, Plaintiff regularly bathes and clothes herself, prepares meals, drives, and uses a checkbook. (Tr. 68, 18). Therefore, the ALJ correctly concluded that the Plaintiff's living situation does not qualify as a "highly structured setting" under 12.02(C). See Johnson v. Colvin, CIV.A. 1:12-3277-SB, 2014 WL 1000887 (D.S.C. Mar. 13, 2014) (reaffirming a "highly structured setting" could exist in a prison environment or at a mental health organization where the plaintiff lived and received treatment and medication, but not where a plaintiff was otherwise able to care for his personal needs on a regular basis).

Nevertheless, Plaintiff asserts that her organic mental disorder meets the requirements of 12.02 by satisfying both the A and B criteria. (Doc. 12). To his end, Plaintiff argues the ALJ did not consider her IQ score differential from premorbid levels in his decision. (Id.). But even assuming the recent IQ score satisfies section A, Plaintiff has not satisfied two of four conditions required by section B. (Tr. 18). Plaintiff's daily living activities and social interactions are only mildly limited. In addition to caring for herself, Plaintiff visits with her daughter and

grandchildren daily and attends church services on the weekend. (Id.). Furthermore, Plaintiff experiences only moderate difficulty in concentration. (Tr. 19). To this end, the ALJ recommended Plaintiff work in a position that requires simple, repetitive tasks and minimal interaction with supervisors and coworkers. (Id.). The Plaintiff has had no episodes of decompensation. (Id.). Therefore, Plaintiff fails to carry its burden in satisfying two of four factors required by Section B.

Listing 12.02 requires the claimant's organic mental disorder to satisfy Sections A and B in tandem *or* Section C. Even assuming Plaintiff's recent IQ score satisfies Section A, it does not satisfy B, nor does her impairment satisfy the requirements of C. The ALJ did not err in finding the Plaintiff does not have an impairment that meets or equals the medical severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

C. Residual Functioning Capacity (RFC)

As a final contention, Plaintiff alleges the ALJ failed to take into account the Plaintiff's prescription and habitual use of an oxygen tank in his RFC assessment. (Doc. 12). At step four, the ALJ analyzed the medical record and assessed the claimant's exertion levels to determine her RFC. In the present case, the ALJ held "after careful consideration of the entire record . . . [that] the claimant has the residual functioning capacity to perform light work," despite her mild to moderate physical and mental restrictions. (Tr. 19). Specifically, due to Plaintiff's chronic obstructive pulmonary disease, "[she] must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (Id.). Furthermore, the ALJ restricted Plaintiff from working with dangerous machinery and recommended limited movement and overhead reaching. (Id.). Thus, the ALJ took into account Plaintiff's contentions that she tires easily and "uses oxygen on a daily basis for the past two years." (Tr. 21-22). An examination of the

objective medical evidence does not corroborate the Plaintiff's allegation that she is unable to work as a result of her pulmonary disease. (Tr. 23). In his examination of the Plaintiff, Dr. Burgess did not detect any wheezes, shortness of breath, rales or rhonchi that would suggest that the intensity and persistence of her symptoms preclude her from work. (Tr. 23). Additionally, the physical burden of toting an oxygen tank will not further hinder the Plaintiff because the ALJ recommended the Plaintiff can only perform simple tasks with minimal reaching and movement. (Tr. 26).

Therefore, the ALJ's decision did not ignore the effect of the Plaintiff's oxygen use in regards to her RFC. On the contrary, the ALJ properly considered the objective medical findings and prescribed a working environment that accommodates Plaintiff's mild to moderate limitations.

Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's findings that Plaintiff is not disabled for Social Security purposes. Accordingly, the Court denies Plaintiff's motion and grants Defendant's motion.

## IV. CONCLUSION

1. Plaintiff's Motion for Judgment on the Pleadings, (Doc. 11), is **DENIED**;
2. Defendant's Motion for Judgment on the Pleadings, (Doc. 13), is **GRANTED**; and
3. This case is dismissed with prejudice;
4. The Clerk of Court is directed to close this case.

Signed: August 15, 2014

Robert J. Conrad, Jr.
United States District Judge